**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

JOSE DIMAS GUTIERREZ CHACON,
*individually and on behalf of others similarly situated*,

                      Plaintiff,

       – against –

P & S SELECT FOODS, INC., P & S SELECT MEATS INC. *d/b/a P & S Select Foods*, RAY MILLAN SR., GARY LANGSAM, ANTHONY MILLAN, and RAY MILLAN JR.,

                      Defendants.

**OPINION AND ORDER**

17 Civ. 1037 (ER)

Ramos, D.J.:

       Jose Dimas Gutierrez Chacon ("Gutierrez") brings this action on behalf of himself and others similarly situated against P & S Select Foods, Inc. ("P & S"), P & S Select Meats Inc. d/b/a P & S Select Foods, Ray Millan Sr., Gary Langsam, Anthony Millan, and Ray Millan Jr. (collectively, "Defendants") alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and of New York State labor laws and regulations. Doc. 1. Before the Court is Defendants' Motion for Summary Judgment on the FLSA causes of action and Defendants' request that, should the motion be granted, the Court decline to exercise supplemental jurisdiction over Gutierrez's remaining state law claims.

       For the reasons stated below, the Court GRANTS Defendants' Motion for Summary Judgment and dismisses Gutierrez's state law claims without prejudice to re-plead in state court.

I. BACKGROUND

   A. Factual Background

P & S is a wholesale meat distributor headquartered in the Bronx that purchases meat and other products from out-of-state and distributes those products to restaurants, butcher shops, and other retail establishments in New York, New Jersey, and Ohio. Doc. 45 ¶¶ 1, 8, 9, 11. Ray Millan Sr. and Gary Langsam own P & S, and Anthony Millan and Ray Millan Jr.—Ray Millan Sr.'s children—work for P & S. *Id.* ¶¶ 2–3.

It is disputed whether Gutierrez was employed by P & S beginning in 2011 or 2012, whether such employment was part-time or full-time, how many hours he worked, and how much he was paid. *Id.* ¶¶ 4–5. However, it is undisputed that at all relevant times Gutierrez was employed as a "helper," or "delivery assistant." *Id.* ¶ 15; Doc. 1 ¶ 4. As such, he was responsible for "among other things, assisting the driver in making deliveries, making sure the pallets were stacked safely[,] assisting with loading and unloading the truck at each delivery[,] and assisting the driver in safe operation of the truck." Doc. 45 ¶ 15. Although he assisted in loading the truck, he was not responsible for determining the location of the pallets. *Id.* ¶ 16. These decisions were made by Ray Millan Sr. and provided to Gutierrez in writing. Doc. 46 ¶ 5.

Gutierrez alleges that during the course of his employment he worked in excess of 40 hours a week without appropriate compensation and that Defendants failed to maintain accurate records of his hours or to provide him with an accurate statement of wages. Doc. 1 ¶¶ 5–6, 55–56. He claims that he worked between fifty-four and seventy-two hours a week without meal breaks or rest periods and was paid a fixed salary of eighty dollars per day from February 2011 to June 2014 and of one-hundred dollars per day from June 2014 to November 2016. *Id.* ¶¶ 45–54. He also alleges that this conduct extended to others and was part of Defendants' policy of requiring employees "to work in excess of forty (40) hours per week without providing the

minimum wage and/or overtime compensation required by federal and state law and regulations." *Id.* ¶¶ 8–9.

### B. Procedural History

On February 10, 2017, Gutierrez brought this action on behalf of himself and others similarly situated. He brought two causes of action under FLSA, one for violation of its minimum wage provisions, 29 U.S.C. § 206(a), and one for violation of its overtime provisions, 29 U.S.C. § 207(a)(1). Doc. 1 ¶¶ 78–88. He also brought claims for violations of New York State Labor Law, including its minimum wage rate, overtime provisions, notice and recordkeeping requirements, and wage statement provisions, as well as a claim for violation of the New York Commissioner of Labor's wage order. *Id.* ¶¶ 89–107. Defendants filed an Answer on March 23, 2017, and the case was referred to mediation, which was unsuccessful. Docs. 16, 17, 19. Discovery closed on September 13, 2018. Doc. 24. After a change in counsel, Defendants filed the instant Motion for Summary Judgment on June 14, 2019. Docs. 36, 38.

## II. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it might affect the outcome of the litigation under governing law. *Id.* The party moving for summary judgment is responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary

judgment." *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (quoting *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)). However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). The non-moving party must do more than show that there is "some metaphysical doubt as to the material facts." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986)).

### III. DISCUSSION

Defendants make three arguments in the instant motion. First, they argue that Gutierrez's first cause of action for violation of FLSA's minimum wage provisions must be dismissed because Gutierrez was paid more than the federal minimum wage during the applicable period. Doc. 40 at 9–10. Next, they argue that Gutierrez's second cause of action for violation of FLSA's overtime provisions is barred by the motor carrier exemption to the FLSA. *Id.* at 5–8. Finally, they request that the Court decline to exercise supplemental jurisdiction over the remaining state law claims if it grants their motion with respect to the FLSA causes of action. *Id.* at 11. Gutierrez consents to dismissal of the FLSA minimum wage claim, Doc. 48 at 1, but disputes

4

that the motor carrier exemption to FLSA should apply, *id.* at 2–8. In any event, he urges the Court to retain supplemental jurisdiction of his state law claims. *Id.* at 8–11.

A. The Motor Carrier Exemption to FLSA

FLSA requires that employees engaged in interstate commerce be paid "at a rate not less than one and one-half times the [employee's] regular rate" of pay for work in excess of forty hours in any given workweek. 29 U.S.C. § 207(a). However, Congress has exempted a broad range of employees from this rule. *See id.* § 213. These exemptions are "narrowly construed against the employers seeking to assert them and their application [is] limited to those establishments plainly and unmistakably within their terms and spirit." *Bilyou v. Dutchess Beer Distribs., Inc.*, 300 F.3d 217, 222 (2d Cir. 2002) (quoting *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)). The burden of invoking any such exemption rests with the employer. *Id.*

At issue in this case is the applicability of the so-called motor carrier exemption to FLSA, which exempts from FLSA's overtime provision "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to [the Motor Carrier Act ("MCA"), 49 U.S.C. § 31502]." 29 U.S.C. § 213(b)(1); *see Bilyou*, 300 F.3d at 222–23. "Whether the motor carrier exemption applies to an employee depends on the nature of both the employer's and the employee's activities." *Dauphin v. Chestnut Ridge Transp., Inc.*, 544 F. Supp. 2d 266, 273 (S.D.N.Y. 2008) (citing 29 C.F.R. § 782.2(a)). First, the employer "must be within the jurisdiction of the Secretary of Transportation by virtue of operating as a 'motor carrier' or 'motor private carrier,' as defined by the [MCA]." *Id.* Second, the employee must be a "driver, driver's helper, loader, or mechanic" whose work directly affects "the safety of operation of motor vehicles on the public highways in transportation in interstate or foreign commerce within the meaning of the MCA." 29 C.F.R. § 782.2(b)(2) (citing *Pyramid Motor Freight Corp. v. Ispass*, 330 U.S. 695 (1947); *Levinson v.*

5

*Spector Motor Serv.*, 330 U.S. 649, 685 (1947); and *Morris v. McComb*, 332 U.S. 422 (1947)). In making this second determination, the name given to the employee's position is not controlling; rather, it is the character of the activities involved in the employee's performance of his job that controls. *Pyramid Motor Freight Corp.*, 330 U.S. at 707–708. "If not all of an employee's activities affect the safety of operations of motor vehicles in interstate commerce, a court must consider 'the character of the activities rather than the proportion of either the employee's time or his activities.'" *Williams v. Tri-State Biodiesel, L.L.C.*, No. 13 Civ. 5041 (GWG), 2015 WL 305362, at *5 (S.D.N.Y. Jan. 23, 2015) (quoting *McComb*, 332 U.S. at 431–32 (1947)); *see also Fox v. Commonwealth Worldwide Chauffeured Transp. of NY, LLC*, 865 F. Supp. 2d 257, 266 (E.D.N.Y. 2012) ("What matters is the degree to which a worker's activities affects safety, not the amount of time the worker spends on that activity.").

Defendants contend that the motor carrier exemption applies because P & S is a motor private carrier and Gutierrez performed duties that directly affected the safety of operation of motor vehicles in interstate commerce. Doc. 40 at 5–8. Gutierrez does not contest that P & S is a motor carrier for purposes of the motor carrier exemption. Doc. 48 at 4. However, he maintains that the exemption is nevertheless inapplicable for two reasons: first, because he only assisted in making intrastate deliveries; and second, because his work in any safety-affecting activities was so minimal as to be *de minimis*. The Court will consider each of these arguments.

*1. Interstate Activity*

There are two ways to satisfy the motor carrier exemption's interstate requirement. If the work involves only intrastate travel, the requirement may still be met if the goods being transported are in a "practical continuity of movement in the flow of interstate commerce." *Bilyou*, 300 F.3d at 223 (internal quotation marks and citations omitted). Alternatively, the requirement may be satisfied if interstate travel is a "natural, integral, and inseparable part of the

employee['s] duties, such that any employee is likely to be called on to perform interstate travel." *Dauphin*, 544 F. Supp. 2d at 274 (internal quotation marks and citations omitted). In the latter case, "the employees are all subject to the motor carrier exemption while they fill that position regardless of the actual number of hours they individually devote to interstate travel." *Id.* (citing *McComb*, 332 U.S. at 433). Making this determination requires "a 'fact-specific analysis' to determine the 'character of interstate driving . . . , including an examination of the method by which the employer assigns the interstate activity to the pertinent class of employees, the nature of the employer's business, and perhaps to a lesser degree, the proportion of interstate-to-intrastate employee activity.'" *Cruz v. AAA Carting & Rubbish Removal, Inc.*, 116 F. Supp. 3d 232, 249 (S.D.N.Y. 2015) (citing *Masson v. Ecolab, Inc.*, No. 04 Civ. 4488 (MBM), 2005 WL 2000133, at *9 (S.D.N.Y. Aug. 17, 2005)).

P & S does not argue that the first way to satisfy the exemption is applicable, as it is undisputed that its activities were not solely intrastate; for example, Gutierrez agrees that P & S received products from out-of-state and delivered them to customers in New York, New Jersey, and Ohio. Doc. 49 at 2; Doc. 45 ¶¶ 11, 14. Instead, P & S argues that interstate travel was a "natural, integral, and inseparable part" of Gutierrez's duties.

Gutierrez maintains that he "regularly only traveled within New York making deliveries for P & S Select Foods." Doc. 48 at 5. In support of this, he offers the deposition testimony of Defendant Gary Langsam. Upon being asked what geographic areas Gutierrez would make deliveries to, Langsam lists the Bronx, Manhattan, Brooklyn, and Queens without mentioning any deliveries to New Jersey or other out-of-state locations. Doc. 47, Ex. 1 at 30:18–25. Gutierrez also offers the following dialogue from the Langsam deposition:

> Q: Where would P & S Select Foods, Inc. make deliveries to? I know you mentioned a number of boroughs.

7

> A: Those are the fast four boroughs that I just mentioned [referring to a previous answer discussing delivery routes in the Bronx, Manhattan, Brooklyn, and Queens].

*Id.* at 19:2–19. Gutierrez argues that this testimony shows that P & S only made deliveries to the Bronx, Manhattan, Brooklyn, and Queens. Doc. 48 at 5. However, this interpretation would be at odds with Gutierrez's admission that "P & S drivers and helpers are dispatched from the P & S facility to deliver the products to customer locations in New York, New Jersey and Ohio." Doc. 45 ¶ 11. It would also be at odds with Gutierrez's admission that he made deliveries to New Jersey on two or three occasions. Doc. 46 ¶¶ 6–7.

But the only necessary inconsistency is between Gutierrez's arguments in opposition to summary judgment and his own admissions. Langsam's deposition testimony can easily be squared with the rest of the record evidence. As to the testimony regarding Gutierrez's routes, even though Gutierrez may have worked predominately on intrastate routes, it is still possible that he could have been called, at any time, to travel interstate—and indeed, by his own admission, he was called to do so on at least two occasions. This is further supported by Ray Millan Sr.'s written testimony that P & S employees regularly made out-of-state deliveries; that all employees were expected to learn all of the routes, including the interstate routes; that all delivery routes were assigned indiscriminately among drivers and helpers; and that any employee, including Gutierrez, could have been called on at any time to make an interstate delivery. Doc. 50 ¶¶ 3, 5–11. As to Langsam's testimony regarding P & S's routes, it is also entirely possible that while the Bronx, Manhattan, Brooklyn, and Queens were considered "the fast four boroughs," P & S had other regular delivery routes as well, as also supported by Ray Millan Sr.'s

8

statements. *Id.* ¶ 9–10. Notably, the record is silent as to whether Langsam was ever asked to define what he meant by the phrase "fast four boroughs," or to confirm that Gutierrez never travelled out-of-state or that P & S did not have any regular out-of-state delivery routes.

Gutierrez presents no evidence to challenge the assertion that routes were assigned indiscriminately, or that he could have been called at any time to make a delivery out of state, including to New Jersey. Nor does he point to any additional evidence—such as the proportion of interstate to intrastate deliveries made by P & S—that he would need to properly contest P & S's assertions. *See, e.g.*, *Walden v. Sanitation Salvage Corp.*, Nos. 14 Civ. 112 (ER), 14 Civ. 7759 (ER), 2015 WL 1433353, at *4 (S.D.N.Y. Mar. 30, 2015), (denying summary judgment where counsel's declaration established a factual dispute and identified discovery necessary to resolve it). Therefore, the Court finds that there is no factual dispute as to the nature of Gutierrez's interstate duties and that the interstate requirement of the motor carrier exemption is met in this case.

2. *Safety of Operations of Motor Vehicles*

Additionally, P & S argues that all requirements for the motor vehicle exemption to apply are met because Gutierrez's duties directly affected the safety of operation of motor vehicles. Doc. 40 at 7–8. There is no factual disagreement about Gutierrez's employment duties. Gutierrez admits that he was employed as a "helper," and that he "was responsible for, among other things, assisting the driver in making deliveries, making sure the pallets were stacked safely[,] assisting with loading and unloading the truck at each delivery[,] and assisting the driver in safe operation of the truck," even though "his supervisor determined the location of the pallets in the truck." Doc. 45 ¶¶ 15–16. The only relevant inquiry, then, is whether these job duties are related to the safety of operation of motor vehicles as a matter of law.

Gutierrez posits that his duties do not meet the exemption requirements because he did not exercise judgment or discretion in loading the pallets and because any duties that were related to the safety of operation of motor vehicles were *de minimis*. In support of his position, Gutierrez relies heavily on Department of Labor guidance. This guidance provides that:

> A "loader" may be called by another name, such as "dockman," "stacker," or "helper," and his duties will usually also include unloading and the transfer of freight between the vehicles and the warehouse, but **he engages, as a "loader," in work directly affecting "safety of operation" so long as he has responsibility when such motor vehicles are being loaded, for exercising judgment and discretion in planning and building a balanced load or in placing, distributing, or securing the pieces of freight in such a manner that the safe operation of the vehicles on the highways in interstate or foreign commerce will not be jeopardized.**

29 C.F.R. § 782.5 (emphasis added). It also provides that

> It seems apparent . . . that an employee who has no responsibility for the proper loading of a motor vehicle is not within the exemption as a "loader" merely because he furnishes physical assistance when necessary in loading heavy pieces of freight, or because he deposits pieces of freight in the vehicle for someone else to distribute and secure in place, or even because he does the physical work of arranging pieces of freight in the vehicle where another employee tells him exactly what to do in each instance and he is given no share in the exercise of discretion as to the manner in which the loading is done.

*Id.* (citations omitted).

"The Department of Labor's interpretive guidance regarding the motor carrier exemption, although not binding on this Court, is entitled to respect to the extent that it has the 'power to persuade.'" *Dauphin*, 544 F. Supp. 2d at 273 n.2 (internal citations omitted). In *Tang v. Wing Keung Enters., Inc.*, the court considered this guidance and found that "the plain language states that a loader *either* has responsibility to exercise judgment and discretion in planning and building a balanced load *or* has responsibility in placing, distributing, or securing the freight." No. 14 Civ. 390 (JBW)(LB), 2016 WL 6110454, at *9 (E.D.N.Y. July 11, 2016), *report and recommendation adopted* 210 F. Supp. 3d 376 (E.D.N.Y. 2016). The court there concluded that "[e]ven

10

without exercising any discretion, plaintiffs are expected to follow the directions of a supervisor and correctly load a vehicle, which has a tremendous impact on the safety of the vehicle while it is in transit." *Id*; *see also Khan v. IBI Armored Servs., Inc.*, 474 F. Supp. 2d 448, 457 n.10 ("Though it is obvious to the point of almost being susceptible of proof by judicial notice, the loading or rearrangement of cargo on a truck is obviously related to the safe operation of that vehicle on a highway.").

The Court finds this reasoning persuasive. This is not a case where Gutierrez was involved in the "mere handling of freight." *See Pyramid Motor Freight Corp.*, 330 U.S. at 708. By his own admission, he "ma[de] sure the pallets were stacked safely . . . and assist[ed] the driver in safe operation of the truck." Doc. 45 ¶ 15. There is also no evidence to suggest that these activities were *de minimis*[1]; to the contrary, Gutierrez testified that they were part of his regular duties. *See* Doc. 46 ¶ 5 ("My job also involved working with the driver or another employee to load the pallets for delivery on to the truck. We did not decide ourselves how to load the truck, but instead followed instructions written by Ray Millan, Sr."). Although he loaded the pallets in accordance with written instructions, by his own admission, Gutierrez was responsible for ensuring that these were stacked safely. Gutierrez, then, is a "loader" for purposes of the motor carrier exemption. "An employee who actually and regularly loads the truck clearly has a significant impact on the safe operation of the vehicle." *Tang*, 2016 WL 6110454, at *9.

---

[1] "[C]ourts refer to '*de minimis*' activities for three possible purposes: (1) to find that the employee's activities in relation to safety in interstate commerce may be so trivial as to take the employee out of the motor carrier exemption; (2) to permit an employer to take advantage of the motor carrier exemption on the mere showing that the employee's activities in relation to safety in interstate commerce are *more* than *de minimis*; and (3) to refuse to apply the motor carrier exemption altogether if it can be shown that the employer's activities in interstate commerce are *de minimis* in relation to the employer's activities overall." *Williams v. Tri-State Biodiesel, L.L.C.*, No. 13 Civ. 5041 (GWG), 2015 WL 305362, at *12 (S.D.N.Y. Jan. 23 2015).

For the foregoing reasons, the Court finds that the motor carrier exemption to FLSA applies to Gutierrez. The Court therefore dismisses Gutierrez's second cause of action for overtime violations under the FLSA.

**B. Supplemental Jurisdiction over State Law Claims**

Under 28 U.S.C. § 1367(c)(3), if the Court has dismissed all claims over which it has original jurisdiction, it may decline to exercise jurisdiction over any non-federal claims over which it could have exercised supplemental jurisdiction. Subject matter jurisdiction in the instant action is based on federal question jurisdiction rooted in claims brought under the FLSA. 28 U.S.C. § 1331. Because no federal claim remains that is subject to a merits determination by this Court, it would be inappropriate to adjudicate Gutierrez's state law claims. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well."); *McGugan v. Aldana-Bernier*, No. 11 Civ. 342 (TLM), 2012 WL 1514777, at *8 (E.D.N.Y. Apr. 30, 2012) ("[W]hen all federal claims are eliminated in the early stages of litigation, the balance of factors generally favors declining to exercise pendent jurisdiction over remaining state law claims and dismissing them without prejudice."), *aff'd*, 752 F.3d 224 (2d Cir. 2014). Therefore, Gutierrez's NYLL claims are hereby dismissed without prejudice to repleading in state court.[2]

---

[2] Gutierrez suggests that the Court should retain jurisdiction over his state law claims pursuant to the Second Circuit's decision in *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77 (2d Cir. 2018). However, that case can be easily distinguished. There, the District Court sua sponte declined to exercise supplemental jurisdiction one day before the final pretrial conference and a week before the scheduled trial date without affording either party an opportunity to be heard on the issue. Although litigation has been pending for two years in this case, it is by no means the eve of trial and both parties have been given ample opportunity to be heard.

## IV. CONCLUSION

Defendants' Motion for Summary Judgment is GRANTED. The Clerk of Court is respectfully directed to terminate the motion, Doc. 38, and to close the case.

SO ORDERED.

Dated: November 19, 2019
       New York, New York

_____
Edgardo Ramos, U.S.D.J.